1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11  ALLEN WALL,
                                    NO. CIV. S-04-1314 WBS DAD
12            Plaintiff,

13       v.                         MEMORANDUM AND ORDER
                                    RE: DEFENDANT'S MOTION FOR
14                                  SUMMARY JUDGMENT
    MINNESOTA MUTUAL LIFE
15  INSURANCE COMPANY,[1]

16            Defendant.

17                         ----oo0oo----

18            Plaintiff brings this action alleging state-law claims

19  for breach of an insurance contract and breach of the implied

20  covenant of good faith and fair dealing ("bad faith").

21  Jurisdiction is predicated on 28 U.S.C. § 1332 (diversity).

22  Pursuant to Federal Rule of Civil Procedure 56, defendant moves

23  for summary judgment only as to plaintiff's bad faith claim.

24  _____

25       [1]    Defendant states that its true name is "Minnesota Life
    Insurance Company," and contends that it has been erroneously
26  sued as "Minnesota Mutual Life Insurance Company."  (See Def.'s
    Objections to Evidence Submitted by Pl. in Opp'n to Mot. for
27  Summ. J. at 1).  Plaintiff does not contest that defendant's true
    name is "Minnesota Life Insurance Company."  The court therefore
28  refers to defendant as Minnesota Life Insurance Company.

                                 1

1    The court must grant summary judgment to a moving party
2    "if the pleadings, depositions, answers to interrogatories, and
3    admissions on file, together with the affidavits, if any, show
4    that there is no genuine issue as to any material fact and that
5    the moving party is entitled to judgment as a matter of law."
6    Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary
7    judgment may not simply deny generally the pleadings of the
8    movant; the adverse party must designate "specific facts showing
9    that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);
10   Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

11   Because this is a diversity action involving only
12   California state-law claims, the court must apply California law.
13   See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-79 (1938).
14   The ultimate test of bad faith by an insurer under California law
15   is whether the insurer's actions were unreasonable.  Gourley v.
16   State Farm Mut. Auto Ins. Co., 53 Cal. 3d 121, 127 (1991).  Even
17   if an insurer's denial of benefits is ultimately determined to be
18   incorrect and a breach of an insurance contract, a bad faith
19   claim cannot succeed without showing that the denial of benefits
20   was arbitrary or unreasonable.  See Amadeo v. Principal Mut. Life
21   Ins. Co., 290 F.3d 1152, 1162 (9th Cir. 2002); Love v. Fire Ins.
22   Exchange, 221 Cal. App. 3d 1136, 1151 (1990)("[T]he reason for
23   withholding benefits must have been unreasonable or without
24   proper cause.").

25   Stated another way, "where there is a genuine issue as
26   to an insurer's liability under the policy for the claim asserted
27   by the insured, there can be no bad faith liability imposed on
28   the insurer."  Chateau Chamberay Homeowners Ass'n v. Associated

2

1  Int'l Ins. Co., 90 Cal. App. 4th 335, 347 (2001); accord Fraley
2  v. Allstate Ins. Co., 81 Cal. App. 4th 1282, 1292 (2000); see
3  also Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir.
4  2001); Phelps v. Provident Life & Accident Ins. Co., 60 F. Supp.
5  2d 1014, 1021-24 (C.D. Cal. 1999)(applying California law and
6  granting summary judgment on bad faith claim for denial of
7  disability benefits where "dispute regarding its liability
8  existed at the time" plaintiff's claim was denied).

9          The court counts fourteen (14) different physicians who
10  have examined plaintiff Alan Wall and/or the medical files he
11  sent to defendant to support his disability claim, many of whom
12  arrive at different conclusions.  The numerous conflicting
13  medical opinions with regard to plaintiff's disability claim
14  suggest that defendant should not be faulted for relying on
15  independent medical examiners to evaluate the opinions of
16  plaintiff's doctors and plaintiff's own subjective complaints of
17  disability.

18          For example, some of the clinical evidence sent to
19  defendant by plaintiff covered the years 1990-1995, and Dr.
20  Dixit's updated APS stated that plaintiff's symptoms first
21  appeared in the year 1990.  (Gosse Decl. Ex. H at STND589-00135).
22  However, medical records possessed by plaintiff's own personal
23  physician, Dr. Zaks, indicated that in 1997 an orthopedic
24  surgeon, Dr. Rao, concluded that plaintiff was not disabled.
25  (Id. Ex. I at STND589-00190).  This suggests that plaintiff had
26  claimed he was disabled before, but a specialist referred by
27  plaintiff's own doctor disagreed.  Confronted with this
28  information, it would not appear that defendant acted arbitrarily

1  or unreasonably in seeking independent medical opinions regarding

2  plaintiff's condition.

3          Defendant also appears to have been continually willing

4  to accept new opinions and comments from plaintiff's doctors on

5  plaintiff's condition, and defendant consistently kept plaintiff

6  aware of the claim evaluation process by letter.  (See, e.g., id.

7  Exs. K, P, S, AA, DD).  Through these letters, defendant

8  repeatedly invited plaintiff to call or write with any questions

9  and to provide any additional medical information he wished to

10 submit in support of his claim - even after plaintiff sent an

11 insulting and threatening letter to defendant's representative.

12 (Id. Ex. CC at STND589-00378 ("You skew/screw w/ my survival,

13 I'll skew/screw w/ yours, you corporate ass-kissing portfolio

14 geeks . . . . Better watch out, corpoRAT jacka$$es."))(emphasis

15 in original).  Defendant's solicitous process would not seem to

16 be the mark of an insurer capriciously denying benefits.

17         In his opposition to this motion, plaintiff responds

18 that "fibromyalgia is a medically determinable condition that can

19 cause disability," acknowledged by the Ninth Circuit and the

20 American Medical Association, and that blurred vision can be one

21 of the symptoms of this condition.  (Pl.'s Mem. of P. & A. in

22 Opp. to Mot. at 16)("Pl.'s Opp.").[2]  Defendant does not dispute

23 that fibromyalgia is a real medical condition, or that it can

24

25         [2]  Defendant objects to plaintiff's opposition on the
   ground that it was untimely filed.  (See Def.'s Reply at 2).
26 However, defendant was not prejudiced by plaintiff's late filing,
   as the court finds defendant was able to prepare an adequate
27 reply that was fully responsive to plaintiff's opposition.  The
   court has an interest in deciding cases on their merits and not
28 on technicalities.  Olvera v. Giburbino, 371 F.3d 569, 573 (9th
   Cir. 2004).  Therefore, this objection is overruled.

4

cause disability.  Defendant's motion hinges on the argument that
there was at least a genuine issue as to its liability when the
decision was made to deny plaintiff's claim.  (Def.'s Mem. of P.
& A. in Supp. of Mot. for Summ. J. at 1, 16)("Def.'s Mot.")

Plaintiff claims that he suffers from blurred vision
caused by fibromyalgia.  In support of that claim, he points to
the deposition of Dr. Gardner stating that plaintiff complained
to him of blurry vision, and his own deposition, in which he
testified that he left his job because he could no longer read
well enough to do the job.  (Bianchi Decl. Exs. H, I, Q (Gardner
Dep.) at 31:20-23, Ex. L (Wall Dep.) 14:4-12).[3]

Defendant, on the other hand, points to the broad

---

[3]   Dr. Gardner testified that "I just noticed that in the
first visit [plaintiff] did also say that he was unable to read
and that the eyes were a change [sic] from the fibromyalgia."
(Bianchi Decl. Exs. H, I, Q (Gardner Dep.) at 31:20-23).  What
Dr. Gardner fails to state in his deposition, however, is that he
actually determined that plaintiff had blurry vision or any
reading difficulty. The following interchanges from Dr. Gardner's
deposition highlight this point:

Q    What symptoms of fibromyalgia do you consider Mr. Wall
     to have?
A    He has diffuse pain over a lot of his muscles and low
     energy.
Q    Anything else?
A    No.
Q    That was no?
A    No -- Yes, that was no.
(Cherne Decl. Ex. B (Gardner Dep.) at 7:22-8:6)(emphasis added).
Q    Well, is there something about his condition that would
     make it difficult to read?
A    I know if a person's depressed they'll have trouble
     concentrating.  If somebody has a neck and spine like
     this, it's conceivable that the -- the physical
     position you'd have to be in to read could be painful.
Q    Would he have have any trouble seeing the page?
A    I don't see why he would.  I'm not -- I'm not aware of
     any eye deficit.  Doesn't necessarily rule it out, but
     I don't -- I'm not aware of any.
(Bianchi Decl. Ex. F (Gardner Dep.) at 29:1-29:11)(emphasis
added).

5

1   opinions of numerous medical professionals that plaintiff was not

2   disabled within the meaning of the policy, and that even if

3   plaintiff had fibromyalgia, he could still perform his job

4   functions:  Dr. Rao in 1997 (Id. Ex. I at STND589-00190)("He is

5   not disabled."), Dr. Swartz in 1999 (Id. Ex. L at STND589-

6   00255)("I do not find any functional impairments . . . Mr. Wall

7   is capable of performing the substantial and material duties of

8   his usual occupation."), Dr. Heisler in 2000 (Id. Ex. M at

9   STND589-00265)("[H]is impairment does not appear to be sufficient

10  to explain his ability to return to his former occupation except

11  for what appears to be a lack of motivation and energy."), Dr.

12  Swartz again in 2000 (Id. Ex. O at STND589-00275)("If there is

13  any fibromyalgia existing, it would be mild and would not be of

14  clinical significance or disabling."), Dr. Friedberg in 2000 (Id.

15  Ex. Y)("I did not find [plaintiff] to be disabled."), Dr. Fraback

16  in 2001 (Id. Ex. SS)("I don't find evidence that [plaintiff] has

17  a condition or combination of conditions that should preclude

18  working full-time as a community college instructor.").  Even if

19  it ultimately turns out that all of these medical professionals

20  were unaware of plaintiff's alleged disabling blurry vision, and

21  thus their opinions were incomplete and flawed, plaintiff will

22  ultimately have the burden to show that defendant knew of this

23  disability claim and unreasonably or arbitrarily ignored it.

24  Celotex, 477 U.S. at 323-24.

25       Reasonableness of an insurer's conduct is ordinarily a

26  question of fact.  Carlton v. St. Paul Mercury Ins. Co., 30 Cal.

27  App. 4th 1450, 1456 (1994).  In this case, there has been no

28  demand for a jury, so this court will be the ultimate trier of

1  fact.  It will be for this court to determine from the evidence

2  whether, in the face of the laundry list of physicians who made

3  direct and broad statements to defendant that plaintiff was not

4  disabled, it was unreasonable or arbitrary for defendant to deny

5  coverage.  It will also be for this court to determine from the

6  evidence whether plaintiff properly apprised defendant of his

7  alleged disabling blurry vision in compliance with the policy,

8  which requires written proof of loss.  Those questions of are

9  better left for the court to resolve at the time of trial rather

10 than on summary judgment.  At that time, <u>all</u> of the evidence will

11 be presented, the court will have an opportunity to observe the

12 witnesses and to weigh any conflicting evidence, and the court

13 will be in the best position to make the determination as to

14 whether there is any genuine issue as to defendant's liability

15 under the policy for the claim asserted by the plaintiff.

16        IT IS THEREFORE ORDERED that defendant's motion for

17 summary judgment as to plaintiff's claim for breach of the

18 implied covenant of good faith and fair dealing be, and the same

19 hereby is, DENIED, subject to the court making its determination

20 on the issues raised thereby at the time of trial.

21 DATED:  August 10, 2005

22

23

24 _____
   WILLIAM B. SHUBB
25 UNITED STATES DISTRICT JUDGE

26

27

28

                              7